**Revised May 16, 2001**

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 99-31178
_____

RONALD G. GOODEN, SR.,

Plaintiff - Appellee,

versus

PROVIDENT LIFE & ACCIDENT INSURANCE CO; ET AL,

Defendants,

PROVIDENT LIFE & ACCIDENT INSURANCE CO.,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

May 14, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Ronald Gooden, Sr. ("Gooden") sued Provident Life and Accident Insurance Company

("Provident") for improperly denying his claim for long term disability benefits. The district court found that Gooden was entitled to benefits and that Provident abused its discretion by failing to reasonably investigate Gooden's claim. We reverse and render judgment for Provident.

**I**

Gooden received coverage from the long term disability policy supplied by his employer, BE&K. The policy, which Provident issued and administered, provides "income replacement benefits" for a covered, disabled employee who satisfies the policy's conditions.[1] Gooden sought disability benefits under the policy due to his angina and coronary artery disease, which were discovered after he suffered a heart attack. For approximately seven months after his heart attack, Gooden was unable to work, and, therefore, received short term disability benefits. Thereafter, BE&K placed Gooden on unassigned status, as his cardiologist, Dr. Causey, had indicated he could return to work. Less than a month later, BE&K terminated Gooden's employment due to a workforce reduction. At this time, Gooden requested that BE&K file a claim on his behalf for long term disability benefits.

Gooden's application for benefits included the following documents: a Claimant's Statement, an Employer's Statement, an Attending Physician's Statement of Disability ("APS"), which Dr. Causey completed during Gooden's last appointment, medical records relating to Gooden's treatment, and a letter from Dr. Causey that was dated after Gooden had been informed that his

---

[1] To be eligible for benefits the claimant must meet the policy's disability definition. The policy provides:

> During the Own Occupation Period, Covered Persons are Disabled from their own occupation if due to their Sickness or Injury they:
> 1.    are unable to earn at least the Own Occupation Income Level or;
> 2.    are unable to perform each of the material duties of the occupation that they regularly perform for the Employer.

employment was terminated. In the Claimant's Statement, Gooden noted without elaboration, that he was employed as a piping engineer, and that his injury was not work related. The Employer's Statement contained information regarding the date he returned to work, and the date his employment was terminated. The APS reflected, *inter alia*, Dr. Causey's findings: (1) that Gooden suffered from occasional angina; (2) that his condition had improved; (3) the date on which he would be able to return to work; and (4) his work capacity limitations. The medical records included Gooden's hospital records and the results of his latest stress test. Finally, the letter from Dr. Causey stated that Gooden had coronary artery disease and angina pectoris, which were significant and limited his activity. Although Dr. Causey noted that Gooden had not sustained an "unstable event in the past few months," Dr. Causey felt that Gooden was disabled and could not return to his previous employment.

BE&K also provided Provident with a job analysis form, which detailed the requirements of Gooden's job.[2] Additionally, Provident requested all of Dr. Causey's notes regarding Gooden, and sent Dr. Causey a physical capacities form to determine Gooden's ability to perform his job's duties. Dr. Causey did not fill out the form, but instead referred Provident to his earlier letter.

Thereafter, Provident's medical consultant, Dr. Metcalf, reviewed Gooden's file and determined that the condition of Gooden's heart could be verified from his most recent stress test and arteriography.[3] Based on these results and Gooden's job responsibilities, Dr. Metcalf found that

---

[2] Gooden was required to stand for one hour, three times a day, walk for half hour periods for a total of three hours a day, and sit for an hour at a time for up to four hours a day. He was also required to lift up to fifteen pounds occasionally, was exposed to temperatures varying from thirty to one hundred degrees, and engaged in "some limited climbing, bending and squatting."

[3] The file given to Dr. Metcalf included Dr. Causey's most current notes on Gooden, as Provident was not yet in possession of Dr. Causey's notes from early in Gooden's treatment.

3

Gooden was capable of performing all of his job's duties.

After Dr. Causey's records arrived, Provident sent a letter to Gooden informing him that it had denied his claim. Provident explained that it based its denial on a review of Dr. Causey's records, Gooden's hospital records, Provident's medical staff's determination that the "objective medical findings" did not support Gooden's disability claim, and the results of Gooden's most recent stress test indicating that his "heart was well within normal limits." Further, Provident apprized Gooden that between the time he returned to work and when he was laid off there was no indication that he could not perform his job's duties.

Gooden appealed Provident's decision claiming that Provident relied on two erroneous facts: that he had returned to work during the weeks prior to his termination, and that his heart was within normal limits.[4] To resolve the confusion regarding whether Gooden had returned to work, Provident contacted BE&K. BE&K informed Provident that after Gooden's doctor released him to return to work, BE&K placed Gooden on unassigned employee status, but never assigned him work. BE&K explained to Provident that unassigned employees are "paid to be available for assignment as the need may arise."

Next, Provident assembled an ERISA Appeals Committee, composed of three of Provident's employees, to review Gooden's appeal. The Committee upheld the denial of benefits based on the results of Gooden's stress test, and the fact that he applied for long term disability after he was laid off. Provident notified Gooden of the Appeals Committee's decision, and the reasons for that decision. Furthermore, Provident reiterated that it lacked "medical documentation" buttressing Gooden's assertion that "his condition changed between the time he returned to work and the date

---

[4] Gooden also asserted that Provident was unaware of the "material duties of [his] job."

4

he requested LTD forms." Provident informed Gooden that he would need to submit "medical evidence that [] support[ed] functional loss" for Provident to reevaluate its determination.

Gooden responded by sending Provident two letters, and a copy of the complaint he filed against Provident. In the letters he argued that Provident did not consider the information he submitted, offered to participate in a deposition of Dr. Causey, and inquired concerning the appeal period. Provident replied by inviting Gooden to submit medical findings that suggested his health changed from the time he was released to work until the time he was terminated, and advised him regarding the ERISA appeal period. Thereafter, Gooden proceeded with his claim in district court.

The district court determined that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § § 1001, *et seq*, governed Gooden's claim because the policy fell within the definition of an employee welfare benefit plan. After deciding that it could consider evidence outside the administrative record to determine whether Provident's investigation was "not impartial [and] unreasonable" and "whether Provident abused its discretion in interpreting the policy's terms," the court held that Provident abused its discretion. The court predicated its decision on its determination that Provident failed "to conduct a reasonable and impartial investigation." Based on the evidence in the administrative record and the evidence produced at trial, the court concluded that Gooden qualified for long term disability benefits.

## II

ERISA authorizes our review of Provident's denial of Gooden's claim. *See* 29 U.S.C. § 1132(a)(1)(B) (providing a beneficiary with the right to bring a civil action "to recover benefits due to him under the terms of his plan"). We review Provident's decision for an abuse of discretion, as Gooden's policy reserves to Provident the discretion to determine Gooden's entitlement to benefits.

*See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc) (reviewing for abuse of discretion "when an administrator has discretionary authority"). Our analysis of whether Provident abused its discretion is informed by Provident's role as both the insurer and administrator of Gooden's long term disability plan. As such, Provident operates under a conflict of interest because it "potentially benefits from every denied claim." *Id*. at 295. Therefore, we apply a "sliding scale standard" and accord Provident's decision less than full deference. *Id*. at 297.

When it reviewed Gooden's claim, the district court did not have the benefit of our decision in *Vega*. In *Vega*, we clarified that a conflicted administrator is not under a duty to "reasonably investigate" a claim because it would be "not only inappropriate but inefficient to require the administrator to obtain [] information [in the claimant's control] in the absence of the claimant's active cooperation." *Id*. at 298. Further, we held that a district court, in most instances, is limited to the administrative record when it reviews an administrator's determination. *See id*. at 299. As a result, a district court must inquire only whether the "record adequately supports the administrator's decision"; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim "[w]ithout some concrete evidence in the administrative record." *Id*. at 298, 302.

Gooden asserts that *Vega* does not alter the validity of the district court's decision to consider evidence outside the administrative record. He maintains that our decision in *Wildbur v. Arco Chem. Co.*, 974 F.2d 631 (5th Cir. 1992), created an exception for the use of evidence outside the administrative record to demonstrate that the administrator acted in a biased, partial, or unreasonable manner. Gooden misapprehends the breadth of this exception. In *Wildbur*, we stated that "[d]etermining whether the administrator has given a uniform construction to a plan may require a

court to evaluate evidence of benefit determinations other than the one under scrutiny." *Id*. at 638. Since *Wildbur*, we have further clarified that this exception applies to evidence that "relate[s] to how an administrator has interpreted terms of the plan in other instances." *See Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000) (*citing Vega*, 188 F.3d at 299).[5] As the evidence Gooden desires admitted does not "relate to how [Provident] has interpreted the terms of the plan in other instances," our review will be confined to the evidence contained in the administrative record.

Provident did not abuse its discretion when it denied Gooden's claim because its decision is supported by the administrative record. The evidence contained in the administrative record, which includes the APS filled out by Dr. Causey, Gooden's most recent stress test, Dr. Metcalf's recommendation, and the information regarding the requirements of Gooden's job, indicates that Gooden was capable of fulfilling the duties of his job prior to his termination.[6] While it is true that the record contains a letter from Dr. Causey stating that Gooden was disabled, this letter does not undermine Provident's decision, as it was written after Gooden learned he was being terminated, and was unaccompanied by medical evidence indicating that Gooden's condition changed since the last time Dr. Causey had seen Gooden.[7] Consequently, Provident cannot be faulted for failing to give Dr.

---

[5] Although Gooden does not argue that his evidence will "assist[] the district court in understanding the medical terminology or practice related to a claim," we have also created an exception for the admission of such evidence. *Bratton*, 215 F.3d at 521.

[6] While Dr. Metcalf's recommendation was cabined by his statement that his opinion could change if Gooden's condition worsened, neither Provident nor Dr. Metcalf had reliable medical documentation that Gooden's condition had changed. Additionally, although Dr. Causey indicated on the APS that Gooden could not lift more than twenty pounds, Gooden's job did not require him to lift more than fifteen pounds.

[7] In his letter, Dr. Causey conceded that Gooden had not recently suffered any "unstable events." Furthermore, Provident specifically requested additional medical information from Dr. Causey, which Dr. Causey did not supply. Although Gooden complains that Provident rejected an opportunity to gain information from Dr. Causey, i.e., by deposing him, Gooden could have remedied this situation by deposing Dr. Causey and forwarding the deposition

Causey's letter overriding significance in the face of medical documentation, including Dr. Causey's own reports, indicating that Gooden was not disabled. In addition to the medical documentation, the record indicates that Gooden had been placed on unassigned status, which required him to be available for work, for almost a month prior to his termination. Accordingly, Provident's decision was not an abuse of discretion because, unlike the administrator in *Vega*, Provident based its decision on "concrete evidence in the administrative record." *Vega*, 188 F.3d at 302.

Although Gooden advances a variety of arguments in support of his claim, none justifies finding that Provident abused its discretion. Gooden argues that Provident ignored evidence supporting his claim, i.e., Dr. Causey's letter, and the fact that he did not return to work.[8] First, Dr. Causey's letter was not supported by his previous findings nor the medical evidence, and, therefore, Provident's treatment of the letter was not an abuse of discretion. *Cf. Aboul-Fetouh v. Employee Benefits Comm.*, No. 00-60367, 2001 WL 261815, at *6 (5th Cir. March 16, 2001) (finding that claimant's treating physician's later attempt to provide latitude to his original, precise disability classification was insufficient to create an issue of triable fact); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602-03 (5th Cir. 1994) (accepting administrator's reliance on diagnoses of independent physicians, where those diagnoses conflicted with the diagnoses of the claimant's

---

to Provident to be placed in the administrative record. *See Vega*, 188 F.3d at 298, 300.

Gooden also charges Provident with violating the dictates of *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1015 (5th Cir. 1992), by affording more weight to Dr. Causey's APS statements than his statements in the letter. In *Salley*, we found that an administrator abused its discretion because it relied on a physician's determination that a patient was not suicidal, but refused to follow the physician's advice that the patient required a plan for her release. The present case is factually distinct from *Salley* because Dr. Causey's statements are contradictory, and the conclusions contained in his letter are not supported by medical evidence.

[8] Gooden complains that Provident failed to appreciate Dr. Causey's concern for the stress associated with his job. This information was available to Dr. Causey when he noted on the APS the date Gooden could return to work. Gooden also asserts that the early evaluations of his condition objectively support his claim for benefits. These findings, however, were updated as Gooden's condition improved.

8

physicians). Second, Gooden is correct that there was a misunderstanding between Provident and BE&K regarding Gooden's return to work. BE&K initially told Provident that Gooden was performing 100 percent of his duties shortly before he was terminated. Provident subsequently learned that BE&K had placed Gooden on unassigned employee status, but never assigned Gooden work. BE&K, however, informed Provident that as an unassigned employee Gooden received 80 percent of his base pay for being available to work as the need arose. Based on this information, it was not an abuse of discretion for Provident to conclude that placing Gooden on unassigned employee status indicated that he had returned to work, or, at a minimum, was capable of returning to work. *See Aboul-Fetouh*, 2001 WL 261815, at *6 (finding no abuse of discretion when evidence in the record did not support disability claim).

Gooden also complains that Provident unduly relied on Dr. Metcalf's assessment of Gooden's health when Dr. Metcalf never physically examined Gooden, did not speak to Dr. Causey, and did not have all of Dr. Causey's notes.[9] Although Dr. Metcalf did not examine Gooden, he had copies of Gooden's hospital records, his most recent stress test and arteriography, the APS completed by Dr. Causey, and Dr. Causey's most recent letter. Furthermore, Dr. Metcalf stated that Gooden's condition could be verified from the objective medical information. Accordingly, Provident did not abuse its discretion by relying on Dr. Metcalf's assessment.

Additionally, Gooden argues that Provident never informed him of the evidence it relied on

---

[9] Gooden argues that Provident should have ordered an independent medical examination as Dr. Metcalf was a hired consultant for Provident who did not have the opportunity to examine Gooden. This argument is without merit. Dr. Metcalf stated that Gooden's condition could be objectively verified and did not indicate that an examination of Gooden was required. Further, the Plan does not require that claimants be examined prior to the denial of their claims. *See Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (finding that the administrator of a disability plan did not abuse its discretion by denying a claim after reviewing the claimant's hospital records, and having its physicians, who were not specialists, review the claim).

in evaluating his claim. Provident's letter to Gooden specifically advised him that it based its determination on a review of Dr. Causey's records and Gooden's hospital records, his job requirements, the recommendation of its medical staff, and his most recent stress test. Moreover, Gooden did not attempt to review the administrative record to determine what information it contained despite the provision in Section VII of the policy, which authorizes "[c]overed [p]ersons . . . [to] review any nonprivileged information that relates to their request for review" of the denial of their claim. *See also* 29 C.F.R. § 2560.503-1(g)(1)(ii) (1997) (requiring plan fiduciary to allow claimants to review pertinent documents). Thus, we are unconvinced by Gooden's assertion that Provident "kept him in the dark."

Gooden also maintains that Provident was vague regarding the submission of medical evidence to support his claim. On more than one occasion, Provident explained to Gooden that it had no documentation to support the inference that his condition changed from the time BE&K placed him on unassigned status until the time he was laid off. Gooden responded to these statements by submitting copies of Dr. Causey's letter. While he could have done so, he did not submit for inclusion into the administrative record medical evidence calling into question his most recent medical evaluations, which indicated he was capable of performing his job's duties. *See Vega*, 188 F.3d at 300. As we noted in *Vega*, the "burden [is not] solely on the administrator to generate evidence relevant to deciding the claim." *Id.* at 298.

### III

Because Provident did not abuse its discretion when it denied Gooden's claim, we REVERSE and RENDER judgment for Provident.