**Bobby Creed CHAPMAN,**

v.

**THE PRUDENTIAL LIFE INS. CO. OF AMERICA.**

Civil Action No. 02–2350.

United States District Court,
E.D. Louisiana.

June 18, 2003.

Scott William McQuaig, William Chad Stelly, McQuaig & Stelly, Metairie, LA, for plaintiff.

Harry Simms Hardin, III, Corinne G. Hufft, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for defendant.

### ORDER AND REASONS

DUVAL, District Judge.

Before the Court is Prudential Insurance Company's Motion for Summary Judgment requesting the Court to find as a matter of law that Prudential's denial of Chapman's application for long term disability benefits was not arbitrary and capricious. (Rec.Doc.5). After consideration of the briefs, the administrative record, and relevant case law, the Court **GRANTS** Prudential's motion and dismisses Chapman's claim for disability benefits under ERISA and his state law claims **WITH PREJUDICE.**

### INTRODUCTION

The instant dispute arises over whether the plaintiff, Bobby Creed Chapman, is entitled to long-term disability benefits under Orion Refinery's Group Plan for long-term disability insurance. The plan in question is an ERISA plan and vested Prudential, as the insurer of the plan, with discretionary authority to administer it. *See* Prudential Long Term Disability Coverage ("LTDC"), Salaried Employees, p. 9. The plan provides that "total disability" exists and an employee is entitled to long-term disability benefits when all of the following conditions are met:

(1) Due to Sickness or accidental Injury, both of these are true:

 (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

 (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience . . .

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of Doctor.

*See* Prudential LTDC, Salaried Employees, p. 9. Under the terms of the policy, before qualifying for long-term disability payments, the claimant must be totally disabled and unable to perform the duties of his or her current occupation for ninety (90) days. *Id.* at 3. The plan refers to this 90–day period as the Elimination Period. Under the plan, Prudential will pay long-term disability benefits from the time the 90–day Elimination Period ends until the Maximum Benefit Duration, which is usually around the age of retirement. *Id.* at 3, 10. This period of time between the end of the 90–day Elimination Period and the Maximum Benefit Duration is called the Initial Duration Period.

Section (1)(a), states that in order to have Total Disability a claimant must be "unable to perform, for wage or profit, the material and substantial duties of [her] occupation." In addition, in order to continue receiving benefits after the claimant reaches the Maximum Benefit Duration, (i.e. her retirement age), she must also be "unable to perform for wage or profit, the material and substantial duties of *any* job for which [she is] reasonably fitted by [her] education, training or experience." In other words, in order to suffer from a Total Disability under the plan, the policy holder must be unable to perform the material duties of *her* job and at the age of retirement be unable to perform the material duties of *any* job for which she is reasonably trained.

*Chapman's Injury*

Chapman worked at Orion Refining Company as a Project Coordinator. His position required him to lift and carry objects weighing up to 50 pounds, frequently stand, walk, bend, climb, reach and drive, and to occasionally sit, twist, crawl, or squat. His job also required him to meet with contractors, engineers, and manage safety and project operations. On July 5, 2000, Chapman injured his back at work when he tripped over a water cooler and fell from a porch. He continued working after the injury while also seeing a physical therapist. On September 5, 2000 he stopped working due to his back pain.

On September 13, Dr. Morris, Chapman's attending and treating physician, evaluated Chapman and indicated that he should be able to return to work immediately. Dr. Morris stated, however, that "[Chapman] continues to have symptoms and has, in fact, worsened." The report also stated that he "might have a herniated disc" and if so, "he might not be able to return to work for six weeks or more." On September 22, 2000, however, Dr. Morris, recommended that Chapman could return to work and continue light duty. Dr. Morris ordered an MRI and the results indicated "mild disc degeneration changes" but "no disc herniation."

On October 30, 2000 Chapman met with a neurologist, Dr. Johnston. Dr. Johnston's initial evaluation indicated that Chapman had "no persistent focal numbness or weakness. Bladder ok. Ambulation 1 to 4 miles daily....Pain improved with medication." The evaluation also indicated, "obvious voluntary decrease" in some of his motor skills.

On November, 20, 2000, Chapman filed a claim with Prudential along with the report of Dr. Morris, as an attachment to support the claim. The report, which Dr. Morris completed on November 14, 2000 indicated that Chapman had stopped working because a "fall at work result[ed] in lumbar strain, cervical strain, multiple contusions." The report also noted that Chapman had made significant progress, although he displayed symptoms of "cervical strain/contusions, [which] resolved relatively quickly, but [still had] lumbar symptoms." Dr. Morris recommended that Chapman not return to work until after a

re-evaluation set for November 20, 2000. On that date, Chapman met again with Dr. Johnston. Dr. Johnston's report indicated that Chapman had "persistent pain" in his thigh, "urgent bladder," but no numbness. He stated that Chapman informed him that he "ambulated" one mile daily, usually without pain. Again, Dr. Johnston indicated "obviously voluntary decrease all [motor] groups, both LE's, which to the extent demonstrated should preclude ambulation."

On January 10, 2001, Chapman saw Dr. Johnston again. Dr. Johnston's report indicates: "bladder function unchanged," "able to ambulate for about one hour," "obvious voluntary decrease all [motor] groups," "motor function demonstrated on exam not compatible with ambulation," "doubt significant lumbar MS dysfunction," "no objective focal clinical signs acute cauda equina compression," "cauda equina syndrome unconfirmed" and "clinical presentation strongly suggests function factor predominant." Dr. Johnston recommended on a form which Chapman sent to Prudential that Chapman's symptoms were caused by "cauda equina syndrome" and that he should remain off work until a myelo/CT was completed.

On February 20, 2001, Prudential denied Mr. Chapman's claim. The denial letter relied on Chapman's treating physicians' reports from November 14, 2000, through January 10, 2001. The denial states in pertinent part:

> The Attending Physician Statement completed by Dr. Morris on November 14, 2000 states you stopped working due to a fall at work that resulted in a lumbar sprain, cervical strain, and multiple contusions. The Attending Physician Statement completed by Dr. Johnson on January 1, 2001, indicates you stopped working due [to] Cauda Equina Syndrome. However, neither Dr. Morris nor Dr. Johnston provided us with objective medical information to support total disability.

Prudential Denial, 2/20/01. The letter indicates that Prudential denied benefits based on the fact that there were no objective conditions warranting a finding of total disability and that Chapman was able to "ambulate" one mile daily without pain. Additionally, the administrator emphasized Dr. Johnston's opinion that Chapman's motor functions during the exam were inconsistent with his self-reported ability to ambulate. Finally, the administrator indicated that Chapman's subjective "complaints of back pain and headaches" did not support a finding of "total disabling impairment."

On March 26, 2001, Mr. Chapman appealed Prudential's denial of his claim. In his appeal Chapman argued that he is not able to perform his occupation because there are "safety issues regarding his condition and medications." On May 9, 2001, Prudential again denied his claim for the same reasons it had denied his initial request. The second denial letter added the fact that during the 90–day Elimination Period, from September 5, 2000 to December 3, 2000, his physicians did not indicate that Chapman's medications would have rendered him unable to perform his duties. Additionally, Prudential found that the diagnostic testing revealed only "mild changes not indicative of a Totally [sic] Disability."

On September 6, 2001, Mr. Chapman requested that Prudential reconsider its denial of his appeal. Prudential referred Chapman's file to Dr. Gale Brown, a disability management specialist, for review. Dr. Brown reviewed Chapman's entire medical file and found that there was an absence of objective medical evidence that Chapman was disabled for the period of September 5, 2000 through December 3,

2000. Dr. Brown based her conclusion on the fact that 1) Chapman's symptoms could not be explained by objective medical documentation, 2) no objective documentation indicating that Chapman could not perform medium work, including the essential functions of his job description, 3) Chapman's cognitive impairment related to medications has not been objectively verified because he was placed on light duty immediately following his injury despite taking a combination of medications, and 4) Dr. Johnston has documented evidence of symptom magnification.

On October 24, 2001, Prudential denied Chapman's request that it reconsider his appeal citing Dr. Brown's conclusion that she found that Mr. Chapman had the physical and mental capacity to perform the duties of his occupation during and beyond the Elimination Period.

On July 5, 2002, Chapman filed suit in the 29th Judicial District Court, Parish of St. Charles, State of Louisiana. In his petition for damages, he alleges that he is entitled to benefits under the long term disability plan because he is unable to perform the material and substantial duties of his occupation. The petition alleges that Prudential 1) failed to properly review medical records, 2) failed to properly review the provisions of the long-term disability plan, 3) failed to properly follow established guidelines, 4) failed to properly train employees, 5) failed to monitor the claims handling practices of employees, 6) intentionally harassed the plaintiff, 7) acted negligently, and 7) engaged in activities amounting to breach of contract.

On August 1, 2002, Prudential filed a notice of removal with this court claiming that the plaintiff's lawsuit involves a claim for long term disability benefits under and employee benefit plan that is regulated by ERISA. On January 3, 2003, Prudential filed the instant Motion for Summary Judgment requesting that the Court find, as a matter of law, that the plan administrator's determination that Chapman was not eligible for long-term disability benefits was not arbitrary and capricious.

## Summary Judgment Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

## ANALYSIS

### Review of ERISA claims

Federal Courts have jurisdiction to review determinations made by employee

benefit plans, including disability benefit plans. 29 U.S.C. § 1132(a)(1)(B)(providing a beneficiary with the right to bring a civil action to recover benefits due to him under the terms of the plan). In the complaint, Chapman alleges state law claims. Prudential removed the case contending that the plan is governed by ERISA. To date, Chapman has not contested the status of the plan as an ERISA plan, although the Court has given him ample opportunity to do so. Consequently, the Court finds that the plan is governed by ERISA and will resolve the Motion for Summary Judgment under an ERISA analysis.

**Abuse of Discretion Standard of Review**

As mentioned earlier, Prudential has denied Chapman long-term disability benefits under the Orion employee health insurance plan. Generally, benefit determinations made by a plan administrator can be divided into two categories: 1) the determination of the facts underlying the claim for benefits; and 2) the determination of whether the administrator properly interpreted the terms of the plan. *See Ramos v. BellSouth Long-term Disability Plan*, No. 01–0013, 2001 WL 1352319, *3 (E.D.La. Nov. 1, 2001)(citing *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637 (5th Cir. 1992)). Case law provides different standards of review depending upon whether the plaintiff challenges the administrator's determination of facts underlying the plan, or the administrator's interpretation of plan terms. *Id.* This case implicates the plan administrator's determination of facts underlying the claim for benefits, not the administrator's interpretation of the plan's terms. *Compare Gooden v. Provident Life*, 250 F.3d 329 (5th Cir.2001)(reviewing a plan administrator's factual determination) *with Duhon v. Texaco*, 15 F.3d 1302 (5th Cir.1994)(reviewing a claimant's challenge to the administrator's interpretation of the plan). A factual determination usu-

ally consists of an administrator's finding that a claimant's condition meets a definition in the policy. For instance in *Gooden*, a case that is an example of a plan administrator's factual determination, the administrator determined that "objective medical findings" did not support Gooden's disability claim. *Gooden*, 250 F.3d at 331. In contrast to *Gooden*, a challenge to plan interpretation usually consists of the plan administrator's interpretation of a plan term. For example, in *Duhon*, the court considered whether the administrator abused his discretion in interpreting the phrase "any job for which he ... is qualified" as meaning "any job that required only sedentary or light work." *Duhon*, 15 F.3d at 1307. For the reasons that follow, Mr. Chapman's challenge is most accurately described as a challenge to the plan administrator's factual determinations, rather than a challenge to the plan's interpretation.

*Prudential's factual determination*

Chapman claims that Prudential abused its discretion when it made the factual determination that Chapman could perform the duties of Project Coordinator and that his injuries did not render him "totally disabled." The plaintiff contends that the following are issues of fact that warrant a denial of Prudential's Motion for Summary Judgment:

1. Whether Mr. Chapman was entitled to long-term disability benefits under the subject Plan;

2. Whether Mr. Chapman experienced a continuous disability during September 5, 2000 through December 3, 2000 and thereafter;

3. Whether the medical records and office notes of Dr. Morris reflect that Mr. Chapman's medical condition rendered him "totally disabled" under the plan;

4. Whether the medical reports and office notes of Dr. Johnston reflect that Chapman's condition rendered him totally disabled under the plan;
5. Whether Mr. Chapman was unable to perform the material and substantial duties of a Project Coordinator; and
6. Whether Mr. Chapman met the criteria to be considered totally disabled.

This list of potential issues of material fact are challenges to the administrator's factual determination because they question the facts the administrator used in assessing Chapman's disability. Additionally, Mr. Chapman's alleged issues of fact relate to whether the facts support the administrator's factual determination that Chapman was not totally disabled under the plan.

■■■ According to the policy, Prudential, as plan administrator, had discretionary authority to grant and deny claims for disability benefits. *See* Prudential LTDC, Salaried Employees at 9. The plan states explicitly that "[t]otal disability exists when *Prudential* determines that all of these conditions are met." *Id.* at 9 (emphasis added). Therefore, it is clear that the plan grants Prudential the authority to approve or deny claims. The Fifth Circuit applies the abuse of discretion standard when reviewing factual determinations made by a plan administrator with discretionary authority. *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 599 (5th Cir.1994); *Salley v. E.I. DuPont De Nemours,* 966 F.2d 1011, 1014 (5th Cir.1992). A court's review of factual determinations under the abuse of discretion standard is limited to the administrative record and a court may not open the record and conduct discovery as to these determinations. *Gooden v. Provident Life,* 250 F.3d 329, 333 (5th Cir.2001); *Ramos,* 2001 WL 1352319 at *4. The only exception in which a district court may allow discovery is when the plaintiff argues that additional evidence, such as an expert report, will assist the district court in understanding the medical terminology or practices relating to a claim. *Gooden,* 250 F.3d at 333. However, this exception is inapplicable to the case at bar, because the Court finds that the treatment notes and medical opinions in the administrative record sufficiently explain Chapman's condition and enable the Court to determine whether the administrator abused his discretion.

■■■ When applying the abuse of discretion standard to an administrator's factual determinations, the Court analyzes whether the administrator acted arbitrarily or capriciously. *Salley,* 966 F.2d at 1014. A decision is arbitrary when made "without a rational connection between the known facts and the decision or between the facts and the evidence." *Lain v. UNUM Life Ins. Co.,* 279 F.3d 337, 342 (5th Cir.2002). A plan administrator's decision will be affirmed if it is supported by "substantial evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.* 168 F.3d 211, 215 (5th Cir.1999). "Substantial evidence" is more than a mere scintilla ... [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Girling Health Care, Inc. v. Shalala,* 85 F.3d 211, 215 (5th Cir.1996). A court may not substitute its judgment for that of the plan administrator. *Marziale v. Hartford Life and Accident Ins.,* No. 01–480, 2002 WL 1359639, *4 (E.D.La. Jun. 20, 2002). The abuse of discretion standard exists to "ensure that administrative responsibility rests with those whose experience is daily and continual, not with judges whose exposure is episodic and occasional." *Id.*

■■■ The abuse of discretion standard sets a relatively high bar for the plaintiff

to overcome. However, in cases where the plan administrator is a "self-interested insurer" who serves as both the insurer and the administrator of the plan and stands to gain from a denial of the claim, the Fifth Circuit applies a "sliding scale" that relaxes the abuse of discretion standard. *Id.* Just how far the scale slides depends upon the amount of evidence the plaintiff brings forward showing a conflict of interest. *Id.* If there is no evidence of a conflict of interest, an administrator's decision is viewed only with "a modicum less deference" than the ordinary abuse of discretion standard. *Id.* In reality, even with this reduced standard, the plaintiff is not in a much better position to defeat the administrator's findings. It is difficult to prove a conflict of interest beyond the inherent conflict of the "self-interested insurer" when the Court is confined to the evidence in the administrative record. Although the relevant case law considers these circumstances to create a slight conflict of interest and grants administrators "a modicum less deference," the Court finds it difficult to conceive of a conflict more glaring than the possibility that the administrator's job success may depend upon the number of claims it denies. However, as mentioned earlier, the Court must apply the "modicum less deference" standard in the instant case where there is no evidence of a conflict of interest other than the fact that the plan administrator is the insurer and has the authority to deny or approve claims.

The Court has scoured the administrative record and has not found any evidence of a conflict of interest that would compel it to use a standard that is below the "modicum less deference" standard. Following Fifth Circuit precedent, the Court has limited itself to reviewing the administrative record in order to resolve this inquiry. *See Gooden,* 250 F.3d at 333. In *Gooden,* the Court explained that a district court may not consider evidence outside the administrative record to "demonstrate that the administrator acted in a biased, partial or unreasonable manner ..." but could only consider outside evidence of bias if the evidence relates to "how [the Plan Administrator] has interpreted the plan in other instances." *Id.* Because Chapman does not allege that the plan administrator interpreted the plan incorrectly and because he only challenges the administrator's factual determination that Chapman was not totally disabled, he may not avail himself of this exception. The Court will now apply the abuse of discretion standard with a "modicum less deference" to the facts of the case.

█ According to the plan administrator, Mr. Chapman was not totally disabled under the plan and able to perform the material and substantial duties of a Project Coordinator. The Court finds that the record is replete with evidence supporting the administrator's conclusion. First, the administrator repeatedly explained that the denial of benefits was based on a lack of objective evidence pointing toward a permanent disability. Chapman's lumbar spine x-rays and a lumbar MRI indicated only mild degenerative changes. Additionally, the plaintiff's cervical spine x-rays were normal.

Secondly, a review of Dr. Johnston's medical evaluations indicate that Chapman was able to ambulate for an hour a day and up to four miles, and that his performance on motor skill tests was inconsistent with his description of his ability to ambulate. Essentially, Dr. Johnston's notes indicate that Chapman was exaggerating his symptoms.

Just because Dr. Johnston recommended that Chapman "remain off work" pending diagnostic testing and suggested that Cauda Equina Syndrome contributed

to his medical condition does not indicate that Chapman was totally disabled. In fact, it appears that Chapman's treating physician, Dr. Morris, believed that Chapman would be able to return to work unless he had a herniated disc or the MRI results were abnormal. *See* Dr. Morris's note to Ms. Russel, 9/13/00. As stated previously, the MRI results were normal and Mr. Chapman did not have a herniated disc. Consequently, a review of the record under the abuse of discretion standard applicable to factual determinations supports the findings of the administrator.

■ The plaintiff also suggests that the Court should give greater weight to the opinions of his treating physicians Dr. Morris and Dr. Johnston. Chapman argues that Prudential attached insufficient weight on his doctors' opinions and placed too much weight on the results of its own investigation conducted by Dr. Brown. Contrary to Chapman's assertion, in an ERISA case the administrator is under no obligation to afford the treating physician's opinion greater deference than the physician hired by the insurance company to conduct an investigation. *See Black & Decker Disability Plan v. Nord,* —— U.S. ——, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). The "treating physician rule" requires a court, in the appropriate circumstance, to defer to a patient's treating physician's testimony unless substantial evidence contradicts the testimony. *Salley v. DuPont,* 966 F.2d 1011, 1016 (5th Cir.1992). According to the *Black & Decker,* a recent Supreme Court decision rejecting the "treating physician rule" in the context of ERISA, the Court held that the regulations governing ERISA plans do not instruct plan administrators to accord extra respect to the treating physician's opinions. *Id.* In fact, the Court found that "the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration, or when the specialist engaged by the plan has expertise the treating physician lacks." *Id.* at 1968–69. *Black & Decker* found that it made more sense for plan administrators to view the claimant's reliable evidence as a whole, including the treating physicians opinions, rather than give greater credence to the treating physician's opinions. *Id.* In this case, even reviewing the treatment notes by Dr. Morris and Dr. Johnston reveals that the plan administrator was not arbitrary in denying Mr. Chapman long-term disability benefits because neither Dr. Johnston or Dr. Morris concluded that Chapman was unable to perform the material duties of his position.

The Court is also unwilling to discredit Dr. Brown's opinion merely because Dr. Brown did not examine the plaintiff. *See Gooden,* 250 F.3d at 335. Even though Dr. Brown did not physically examine Chapman, *Gooden* suggests that an independent physical examination is not a requirement. *Id.* A review of the claimant's medical records is sufficient to support the opinion of a doctor appointed by the plan administrator. *Id.* Further, it appears from Dr. Brown's Medical File Review that she reviewed the pertinent medical information the administrator had in its possession regarding Chapman's condition.

The Court finds that the administrator did not act arbitrarily and capriciously with respect to its factual determination that Chapman could perform the material and substantial duties of his job and was not totally disabled. Prudential's denial of Chapman's claim was supported by substantial concrete evidence in the record. Although Chapman advances some evidence that Dr. Johnston and Dr. Morris

recommended that Chapman stay off work at times, when juxtaposed against the other evidence that Chapman was not totally disabled, those comments are insufficient to defeat the "modicum less deference standard." As a result, this Court must not substitute its judgment for that of the administrator and will defer to the administrator's factual determination that Chapman did not qualify for long-term disability benefits. Chapmans' claim for disability benefits under ERISA are therefore dismissed with prejudice.

*Chapman's state law claims*

■ Chapman's complaint alleges various state law claims. He alleges that Prudential failed to properly 1) review the provisions of the long term disability policy; 2) follow established guidelines; 3) review the medical records; 4) train employees; and 5) monitor the claims handling practices of employees. Complaint ¶ 10. Chapman also alleges that Prudential intentionally harassed Chapman and committed acts of negligence and other intentional torts. *Id.*

■ It is well settled that ERISA's provisions "supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1217 (5th Cir.1992). The Supreme Court has stressed the "expansiveness of the 'relate to' standard and its purpose of establishing the regulation of pension plans as an exclusively federal concern." *Id.* In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court held that the words "relate to" should be given their "broad common sense meaning." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). A state law will be preempted if it has a connection with or reference to an employee benefit plan. *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

Chapman's state law tort allegations are general and skeletal. As far as this Court can tell, his claims arise from conduct that is directly arising out of the administration of benefits under the ERISA plan. In ascertaining whether ERISA's preempts certain state law actions courts have held that "state common law claims arising out of the administration of benefits under a [benefit] plan are within the limits of ERISA's reach." *Clark v. Coats & Clark,* 865 F.2d 1237, 1243 (11th Cir.1989); *see also Christopher,* 950 F.2d at 1217–18. Chapman's allegations that Prudential failed to properly review the provisions of the long term disability policy, follow established guidelines, review the medical records, train employees, and monitor the claims handling practices of employees undoubtedly arise out of the administration of plan benefits and are therefore preempted by ERISA.

■ As to Chapman's allegation of negligence and intentional torts, the Court also finds that these claims are preempted. In *Clark,* the Eleventh Circuit Court of Appeals reasoned that a claim for intentional infliction of emotional distress stemming from the pension plan administrator's refusal to pay benefits was preempted by ERISA. *Clark,* 865 F.2d at 1243. Additionally, the Fifth Circuit has found that even if a state law claim is a general law that "in and of itself has no connection to an employee benefit plan," if it relates to an employee benefit plan, it is preempted. *Christopher,* 950 F.2d at 1219. Other Circuits have also held that torts which are related to the plan's administration are preempted. *See Cicio v. Does,* 321 F.3d 83, 96 (2nd Cir.2003)(finding that state law claim for misrepresentation of employee benefit plan preempted

by ERISA); *see also Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.1985)(finding that ERISA preempts state common law claim brought by a beneficiary for intentional infliction of emotional distress because the claim arose out of pension plan administration).

Although Chapman's state law claims are very general and there are no specific facts or state statutes cited to support the allegations in the complaint, it is fair to say that his claims arise from the administration of the plan. Therefore, it is clear from the case law that such state law claims "relate to" an employee benefit plan and are preempted.

<span style="background:black"></span> The last step in the Court's preemption inquiry is the determination of whether Chapman's claims are saved from preemption by ERISA's savings clause. 29 U.S.C. § 1144(b)(2)(A). After conducting this analysis the Court finds, that Chapman's claims cannot avoid preemption because they do not fall within the scope of the savings clause. Pursuant to Title 29 U.S.C. § 1144(b)(2)(A), which courts term the "savings clause," a law that "regulates insurance" survives ERISA preemption. A state law "regulates insurance" and is "saved" from ERISA preemption if the Court finds that the law satisfies two requirements of the recently crafted *Miller* test. *Kentucky Ass'n of Health Plans v. Miller*, —— U.S. ——, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003). In *Miller*, the Supreme Court makes a "clean break from" the former McCarran–Ferguson factors which courts have been using to determine whether a law "regulates insurance." *Id.* at 1479. The McCarran–Ferguson factors directed courts to determine: "first, whether the practice has the effect of transferring or spreading a policy holder's risk; second, whether the practice is an integral part of the policy relationship; and third, whether the practice is limited

to entities within the insurance industry." *Miller*, 123 S.Ct. at 1475. However, under the new two-pronged *Miller* test, a court must first determine that a state law is "specifically directed toward the entities engaged in insurance." *Id.* According to this first prong, "laws of general application that have some bearing on insurers do not qualify." *Id.* at 1475. After a court determines that the state law is specifically directed toward the entities engaged in insurance, under the second prong, "the state law must substantially affect the risk pooling arrangement between the insurer and the insureds." *Id.* at 1479. If the law meets both requirements, then it is "saved" from ERISA preemption under the "savings clause." Because Chapman's state law claims can best be characterized as "laws of general application that have some bearing on insurers," the laws in question fail to satisfy the first prong of the *Miller* test. Consequently, Chapman's state law claims are not "saved" from ERISA preemption and must be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Prudential's Motion for Summary Judgment, (Rec.Doc.5) is hereby **GRANTED** and as a result, Chapman's state law claims and his claims for disability benefits arising under ERISA are hereby **DISMISSED WITH PREJUDICE.**